## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DUSTIN G.,**[1]

        **Plaintiff,**

                                       **Case No. 3:22-cv-3052**

        **v.**                               **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Dustin G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On July 8, 2019, Plaintiff protectively filed his application for benefits, alleging that he has been disabled since March 13, 2018. R. 77, 93, 198–99. The application was denied initially and upon reconsideration. R. 132–39. Plaintiff sought a *de novo* hearing before an administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

law judge ("ALJ"). R. 141–42. ALJ Dina Loewy held a hearing on December 3, 2020, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 45–71. In a

decision dated August 12, 2021, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from March 13, 2018, Plaintiff's alleged disability onset date,

through the date of that decision. R. 25–37. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on March 25, 2022.

R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

September 29, 2023, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 17.[3] On October 6, 2023, the case was reassigned to the undersigned. ECF

No. 18. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

　　　Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 48 years old on his alleged disability onset date. R. 36. Plaintiff met the insurance status requirements of the Social Security Act through December 31, 2021. R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 13, 2018, his alleged disability onset date, and the date of the decision. R. 28.

At step two, the ALJ found that Plaintiff's status post left basal ganglionic infarction, atrial fibrillation, headaches, and asthma were severe impairments. R. 27. The ALJ also found that the following diagnosed impairments were not severe: ascites, umbilical hernia, anemia improved with infusion therapy, hypertension, hemorrhoids, depression, alcohol use disorder in remission, tinnitus, mild hearing loss, and an old, healed right wrist fracture. R. 28–29.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 29–30.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 30–36. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a floor layer. R. 36.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as inspector packer, sealing machine operator, and mail sorter–existed in the national economy and could be performed by Plaintiff. R. 36–37. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 13, 2018, his alleged disability onset date, through the date of the decision. R. 37.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that

his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    State Agency Medical Consultants

As background, the state agency review includes communications with Plaintiff regarding his claim, including a note dated September 17, 2019, reflecting as follows:

> 315PM CALLED CLMNT TO DISCERN MENTAL HEALTH ALLEGATIONS. CLMNT INSISTED THAT HIS COGNITION AND MENTAL STATUS ARE FINE, OTHER THAN DEPRESSION FROM BEING UNABLE TO WORK AND MOMENTARY LAPSES IN FOCUS. HE DOES NOT WISH TO ALLEGE A MENTAL IMPAIRMENT PREVENTING HIM FROM WORKING.

R. 83–84. Under the heading "Findings of Fact and Analysis of Evidence," it was noted, *inter alia*, as follows:

> FINAL SUMMARY AND CONCLUSION
>
> 49YOM INDIV W/ 12YR ED ALLEGING STROKE COMPLICATIONS (SLIGHT MOTOR IMPAIRMENT) AND HEART IRREGULARITIES. ALL SOURCES WERE PROVIDED WELL OVER 35 DAYS TO RESPOND AND UPON REVIEW OF MER, CLMNT WAS ASSESSED A LIGHT RFC (20/ 10/6/6) W/ SOME COMMUNICATIVE, ENVIRONMENTAL, AND POSTURAL LIMITATIONS. THE RATINGS WERE SEPARATE FOR THE CARDIO AND NEUROLOGICAL IMPAIRMENTS, BUT BOTH RESULTED IN THE SAME RATING. THE CLMNT WAS ASKED ABOUT ANY UNDERLYING MENTAL IMPAIRMENTS, BUT DENIED ANY, AND INSTEAD INSISTED ON FOCUSING ON THE PHYSICAL RAMIFICATIONS OF THE CVA (SEE 'GENERAL INFO' CC)
>
> THE SECONDARY LIMITATIONS POSED BY THE RFCS DO NOT SIGNIFICANTLY ERODE THE UNSKILLED LIGHT OR SEDENTARY OCCUPATIONAL BASES. FURTHER, IN THE CLAIMANT'S AGE CATEGORY (18-49, YOUNGER INDIVIDUAL AGE), ALL VOC RULES DIRECT A FINDINGS OF 'NOT DISABLED.' FINALLY, D/T THE CLMNT'S PROXIMITY TO HIS 50TH BIRTHDAY, THE NEXT HIGHER AGE

CATEGORY WAS EXAMINED FOR BORDERLINE AGE CONSIDERATION, HOWEVER ALL RULES IN THE LIGHT TABLE APPLYING TO 50-54 YEAR OLDS WHO CAN COMMUNICATE EFFECTIVELY IN ENGLISH ALSO DIRECT DETERMINATIONS OF 'NOT DISABLED,' SO BORDERLINE AGE WAS IMMATERIAL IN THIS CASE.

AS A RESULT OF THE AFOREMENTIONED FINDINGS, DISABILITY IS DENIED, AND PRW IS EXPEDITED (202.20)

R. 85.

On September 17, 2019, Joseph Sobelman, a medical consultant,[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency. R. 86–88 (provided under the sub-heading "RFC1"). Consultant Sobelman opined that Plaintiff could occasionally (cumulatively one-third or less of an 8-hour day) lift and/or carry 20 pounds; frequently (cumulatively more than one-third up to two-thirds of an 8-hour day) lift and/or carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and had an unlimited ability to push and/or pull (including operation of hand and/or foot controls), other than for lifting and/or carrying above. R. 86. When asked to explain these exertional limitations, Consultant Sobelman responded as follows: "This is a 48-year-old male, T2 with left MCA occlusion with *mild right hemiparesis* and expressive aphasia. *His symptoms have significantly improved*. His exam is non focal, however, the patient complains of intermittent expressive aphasia. He is on warfarin. The etiology of his stroke is unclear." *Id*. Consultant Sobelman found the following postural limitations: unlimited climbing ramps/stairs; frequent balancing; occasional stooping, kneeling, and crouching; but never climb ladders/ropes/scaffolds and never crawl. R. 87. Plaintiff had no manipulative or visual limitations. *Id*. Referring to Plaintiff's speaking limitations, Consultant Sobelman stated,

---

[4] This consultant's credentials do not appear in the record. The Court will refer to him as "Consultant Sobelman."

9

"[D]ysphasic rather than aphasic may frequently be heard, understood and sustain as rehab notes suggest prior to claimant self discontinuing therapy." *Id*. Plaintiff was not limited in his ability to tolerate extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes odors, dusts, gases, poor ventilation, but he should avoid all exposure to hazards. R. 87–88.

Cirilo Encarnacion, another medical consultant,[5] also reviewed Plaintiff's medical record on behalf of the state agency and agreed with Consultant Sobelman that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and had an unlimited ability to push and/or pull (including operation of hand and/or foot controls), other than for lifting and/or carrying above. R. 88–92 (provided under the sub-heading "RFC2").  According to Consultant Encarnacion, Plaintiff could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. R. 88–89. Plaintiff had no manipulative, visual, or communicative limitations. R. 89. Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and humidity, and should avoid all exposure to hazards, but he had an unlimited ability to tolerate wetness, noise, vibration, fumes, odors, dusts, gases, and poor ventilation. R. 89–90. Asked to explain these environmental limitations, Consultant Encarnacion responded, "[N]o unprotected heights — on Eliquis[.]" R. 90. Under the heading, "RFC — Additional Explanation[,]" Consultant Encarnacion stated as follows:

> 49 year old T2 claimant with AOD 3/13/2018 alleges disability due to hert [sic] irregularities.

---

[5] This consultant's credentials do not appear in the record. Plaintiff contends that the specialty code "19" next to Mr. Encarnacion's name, R. 77, 90, reflects a specialty in internal medicine, according to Program Operations Manual System ("POMS"). *Plaintiff's Memorandum of Law*, ECF No. 9, p. 6 n.1. For ease of reference, however, the Court will refer to him as "Consultant Encarnacion."

10

> Claimant with a BMI of 24.8 has h/o CVA in 03/2018 diagnosed with Afib and anticoagulated on Eliquis. LABS: Aortic aneurysm measuring 4.2 cm noted in CXR and chest CT. TTE - LVEF 65-70%, normal ventricular functions. Mild mitral valve regurgitation. Aortic root is normal. *Exam showed claimant CVS is stable* and non-focal neuro sensory.
> *Given the evidence, claimant warrants a 20/10/6/6 RFC*[.]

*Id.* (emphasis added). Consultant Encarnacion went on find that Plaintiff was not limited to unskilled work because of his impairments and that Plaintiff had an RFC for light work. R. 89–90. Moreover, "[o]verall impact of all the case factors justifies using the higher age category[.]" R. 91 (noting that Plaintiff's then-current age was 49 years, 8 months). Asked to explain his assessment of borderline age, Consultant Encarnacion stated that the "light RFC in next age category produces identical result." *Id*. Consultant Encarnacion opined that Plaintiff was not disabled. *Id.*

Arthur Pirone,[6] a medical consultant, reviewed Plaintiff's medical record upon reconsideration for the state agency on November 18, 2019, and provided two RFC opinions. R. 102–08. Under the heading "RFC1," Consultant Pirone agreed with Consultants Encarnacion and Sobelman that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and had an unlimited ability to push and/or pull (including operation of hand and/or foot controls), other than for lifting and/or carrying above. R. 102–03. Asked to explain these limitations, Consultant Pirone stated, "This is a 48-year-old male, T2 with left MCA occlusion with *mild* right hemiparesis and expressive aphasia. *His symptoms have significantly improved*. His exam is non focal, however, the patient complains of

---

[6] This consultant's credentials do not appear in the record. Plaintiff contends that the specialty code "29" next to his name, R. 102, 108, reflects a specialty in orthopedics, according to POMS. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 7 n.2. For ease of reference, however, the Court will refer to him as "Consultant Pirone."

intermittent expressive aphasia. He is on warfarin. The etiology of his stroke is unclear." R. 103

(emphasis added). Consultant Pirone opined that Plaintiff was unlimited in his ability to climb

ramps/stairs; could frequently balance; could occasionally stoop, kneel, and crouch, but could

never crawl. *Id*. Plaintiff had no manipulative or visual limitations. *Id*. According to Consultant

Pirone, Plaintiff was limited in speaking "dysphasic rather than aphasic may frequently be heard,

understood, and sustain as rehab notes suggest prior to claimant self discontinuing therapy." R.

104. Consultant Pirone further opined that Plaintiff had an unlimited ability to tolerate extreme

cold, extreme heat, wetness, humidity, noise, vibration, and fumes, odors, dusts, gases, poor

ventilation, but should avoid all exposure to hazards. *Id.*

Also on November 18, 2019, under the heading "RFC2," Consultant Pirone again opined

that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10

pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of

about 6 hours in an 8-hour workday; and had an unlimited ability to push and/or pull (including

operation of hand and/or foot controls), other than for lifting and/or carrying above. R. 104–05.

However, Consultant Pirone also opined that Plaintiff could frequently climb ramps/stairs,

balance, stoop, kneel, crouch, and crawl, but could never climb ladders/ropes/scaffolds. R. 105.

Plaintiff had no manipulative, visual, or communicative limitations. *Id*. Plaintiff should avoid

concentrated exposure to extreme cold, extreme heat, humidity, and should avoid all exposure to

hazards, especially unprotected heights, but he had an unlimited ability to tolerate noise,

vibration, and fumes, odors, dusts, gases, and poor ventilation. R. 105–06. Under the heading,

"RFC — Additional Explanation[,]" Consultant Pirone stated as follows:

> 49 year old T2 claimant with AOD 3/13/2018 alleges disability due to hert [sic]
> irregularities. Claimant with a BMI of 24.8 has h/o CVA in 03/2018 diagnosed with
> Afib and anticoagulated on Eliquis. LABS: Aortic aneurysm measuring 4.2 cm
> noted in CXR and chest CT. *TTE - LVEF 65-70%, normal ventricular functions.*

> *Mild* mitral valve regurgitation. Aortic root is *normal. Exam showed claimant CVS is stable* and non-focal neuro sensory.
> *Given the evidence, claimant warrants a 20/10/6/6 RFC*[.]

R. 106 (emphasis added). Consultant Pirone opined that Plaintiff had the RFC for light exertional work and ultimately agreed with Consultant Encarnacion's assessment. R. 106, 116–17 ("The initial medical assessments are deem[ed] to be appropriate and are reaffirmed as written."). Asked about Plaintiff's age at the time, *i.e.,* 49 years and 10 months, Consultant Pirone stated, "Claim does not meet borderline age criteria - claimant is not within a few days to a few months of the higher age category OR the medical-vocational rule for the next higher age category does not result in a disabled determination[.]" R. 107 (concluding Plaintiff was not disabled).

On November 21, 2019, Mary McLarnon, M.D., also reviewed Plaintiff's medical record upon reconsideration for the state agency. R. 117, 122–24. She concurred with the RFC2, specifically noting as follows in her assessment:

> 49 year old male; atrial fibrillation on Eliquis; 03/2018 left basal ganglionic infarction; *by 05/2019 weakness had completely recovered according to treating neurologist*. He was treated by Speech Therapy for some months for dysarthria.
>
> 01/2019 CE reported 4/5 strength RUE; 4-/5 strength RLE.
>
> Greater weight is given to specialist opinion.
>
> I concur with the RFC2 in file.

R. 117 (emphasis added).

## B.    Haroon Khan, PA-C

On November 3, 2020, Haroon M. Khan, PA-C, a physician's assistant in the office of Plaintiff's cardiologist, completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Residual Functional Capacity Questionnaire CARDIAC." R. 976–78. Mr. Khan noted Plaintiff's diagnoses as cerebrovascular accident ("CVA") and atrial fibrillation and identified

dyspnea as the only symptom. R. 976. According to Mr. Khan, Plaintiff had no chronic pain /

paresthesia or angina. *Id.* The only positive objective signs exhibited by Plaintiff were fatigue

and shortness of breath. *Id*. Mr. Khan also stated that Plaintiff's physical symptoms and

limitations caused emotional difficulties such as depression or chronic anxiety: "pt has chronic

depression[.]" *Id*. According to Mr. Khan, Plaintiff had marked limitations of physical activity,

as demonstrated by fatigue, palpitations, dyspnea, or angina, but was comfortable at rest. *Id*.

Plaintiff's limitations began in March 2018 and were expected to last twelve months or longer.

*Id*. Mr. Khan listed no medications for Plaintiff. R. 977. According to Mr. Khan, Plaintiff could

walk for 20 minutes without rest or severe pain; could sit for 30 minutes before needing to get

up; and could stand comfortably for 30 minutes at one time before needing to sit or walk around.

*Id*.  Asked how long Plaintiff could sit in an 8-hour day, Mr. Khan handwrote "unknown[.]" *Id*.

He opined that Plaintiff could stand and/or walk for less than 2 hours in an 8-hour workday and

would require a job that allowed him to change between sitting, standing, and walking. *Id*.

Plaintiff would require unscheduled breaks, but it was "unclear" how often Plaintiff needed such

breaks. *Id*. However, Mr. Khan also indicated that Plaintiff needed 3 breaks lasting 10 minutes

each because of his symptoms of shortness of breath and chronic fatigue. *Id*. He did not need to

elevate his legs with prolonged sitting. *Id*.

## V.    DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination

because the ALJ failed to properly consider the opinions of the reviewing state agency medical

consultants and of Mr. Khan, and failed to explain or support the RFC limitation regarding the

need to change positions. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 9–17; *Plaintiff's*

*Reply Brief*, ECF No. 13, pp. 1–4. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift or carry 20 pounds occasionally, 10 pounds frequently; he can stand and/or walk for 6 hours in an 8-hour workday with normal breaks and can sit for six hours in an 8-hour workday with normal breaks; he can occasionally climb ramps or stairs. He can never climb ladders ropes or scaffolds. he can occasionally balance or stoop and can never kneel, crouch, or crawl; he must avoid concentrated exposure to extreme temperatures, wetness, humidity, vibrations, and pulmonary irritants such as fumes, odors, dusts, and gases; he must avoid all exposure to hazardous machinery, unprotected heights and operational

15

control of moving machinery; he can tolerate moderate office noise and light; *after standing or walking 30 minutes, he may sit at the work-station for 3 minutes while on task before resuming standing or walking; and after sitting for 30 minutes he may stand at the work-station for 3 minutes while on task before resuming sitting.*

R. 30 (emphasis added). In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, Plaintiff's hearing testimony that he receives no mental health treatment and has no doctor-ordered work restrictions, although he insisted that he is unable to work due to an inability to sit longer than 20 minutes at a time as a result of neck pain and headaches; his testimony that he can walk only about 20 minutes before needing to stop and catch his breath, that he can lift and carry as much as a 30-pack of 16-ounce bottled waters, that he has difficulty kneeling and then standing back up because of problems with his leg and hip, and that he experiences shortness of breath and must nap during the day because of fatigue; the fact that, in March 2018, Plaintiff suffered a left middle cerebral artery syndrome ("MCA") left basal ganglionic infarction with mild right paresis and expressive aphasia and underwent Tissue Plasminogen Activator ("TPA") treatment with improvement of weakness; evidence of treatment for atrial fibrillation and mild expressive aphasia; the fact that transcranial and carotid ultrasounds revealed no evidence of any significant intracranial or carotid stenosis and his only residual deficit during his hospital stay was mild word-finding difficulties; Plaintiff's report in May 2018[7] that his weakness had completely resolved although he had some residual aphasia; the fact that Plaintiff discharged himself from speech therapy and refused further treatment despite having word finding difficulty (although Plaintiff did apparently undergo additional speech therapy in 2020); the fact that, by October 2018, Plaintiff had normal physical findings, including normal gait and station, normal range of motion, normal strength and tone, intact

---

[7] The ALJ mistakenly referred to March 2018, rather than May 2018. R. 30 (citing, *inter alia*, Exhibit 21F/14, R. 956, which reflects a date of May 15, 2018).

cranial nerves, no sensory deficits, no motor deficits, and no more than mild expressive aphasia

and right hemiparesis; an August 2019 sub-maximal exercise stress test during which Plaintiff

exercised for six minutes and 45 seconds, achieving approximately 10.1 METS; a September

2019 nuclear stress test that showed moderate size mild anterior ischemia, but which also

indicated normal left ventricular function with an ejection fraction of 85% with moderate sized

mild ischemia; a July 2020 carotid ultrasound Doppler study that found no significant stenosis

and an abdominal ultrasound that found no ascites; a November 2020 cardiology follow-up visit

during which Plaintiff complained of chest pain with mild exertion and shortness of breath; the

fact that Mr. Khan saw no clear cardiac etiology for Plaintiff's complaint of shortness of breath

and referral of Plaintiff to a pulmonologist for further examination; a normal carotid ultrasound

and MRI of the heart and chest; a March 2021 cardiac follow-up visit during which Plaintiff

reported that he was feeling well with no new complaints and no report of headaches; a

completely normal physical examination and no evidence of hypertrophic cardiomyopathy on

MRI; Plaintiff's report that his pulmonary workup was negative and that his shortness of breath

was attributed to deconditioning; a coronary angiography that indicated no significant coronary

artery disease; normal x-rays in August 2019 of the cervical spine and shoulders, despite

Plaintiff's complaint of neck pain and an inability to put pressure on his shoulders; an August

2018 examination for right hand pain during which Plaintiff denied burning, decreased range of

motion, or difficulty opening doors and examination found no tenderness to palpation and

normal reflexes, coordination, motor strength, and sensation, with no crepitus or instability;

physical examinations that generally indicated findings of normal gait, range of motion,

sensation, and motor strength, although some office visits reflected right side lower extremity

weakness; a July 2019 x-ray of the right wrist that showed no current acute fracture; Plaintiff's

complaints of fatigue and headaches since his cerebrovascular accident and treatment with medication prescribed by a neurologist; the opinion of Plaintiff's hematologist that he is restricted in physically strenuous activity but that he is ambulatory and able to carry out work of a light or sedentary nature, such as light house-work and office work; Plaintiff's diagnosis of asthma (also  characterized as COPD) and treatment with Singulair; Plaintiff's oxygen saturation level of 98% without evidence of home oxygen use or hospitalization; a spirometry test that showed an FEV1 of 2.57L and normal diffusing capacity, with a finding of a mild airway obstruction; the fact that Plaintiff has not required more than routine outpatient treatment since his left basal ganglionic infarction; a January 2019 consultative medical examination at the request of the state agency that revealed 4/5 motor strength in the right upper extremity, 4+/5 in the right lower extremity, and intact motor strength in all other areas; findings of intact sensation, position, and vibration but decreased on the right; findings that Plaintiff could walk on toes and heels and tandem walk, and that his range of motion was unrestricted, his gait was normal without an assistive device and he had no restriction of movement of the wrist or ankle; and numerous findings by other treating specialists of full motor strength of the extremities. R. 31–33.

The ALJ went on to find that Plaintiff's symptoms do not preclude the RFC for a limited range of light exertional work, as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant does have underlying medically determinable impairments that could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a continuing and regular basis. In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the symptoms and degree of functional limitations alleged by the claimant. The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably

> be expected to result in symptoms of such a severity or frequency as to preclude the range of work described above. Rather, the factors set forth in 20 CFR 404.1529(c) and 416.929(c) support the residual functional capacity that has been found.

R. 35–36. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See* 20 C.F.R. § 404.1520c; *Zirnsak*, 777 F.3d at 615; *Johnson v. Comm'r of Soc. Sec.*, 263 F. App'x 199, 203 (3d Cir. 2008); *Rutherford*, 399 F.3d at 554.

Plaintiff, however, challenges the RFC determination, arguing first that the ALJ erred in her consideration of the state agency opinions. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 9–12; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–5. For the reasons that follow, this Court disagrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter*, 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

19

For claims filed after March 27, 2017,[8] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[8] As previously noted, Plaintiff's claim was filed on July 18, 2019.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In crafting the RFC determination at step four of the sequential evaluation, the ALJ in this case found, *inter alia*, that the opinions of the reviewing state agency medical consultants were "partially persuasive[,]" reasoning as follows:

> The opinions of the state agency medical consultants at Exhibits 2A/4A/5A are partly persuasive. Their conclusion that he can perform light exertion work is consistent with the evidence generally showing intact motor strength, sensation, and gait and is persuasive. However, the remainder of their assessments do not adequately accommodate the evidence of mild obstructive airway disease, headaches, fatigue, and some occasional mild residual right side weakness secondary to his stroke. The undersigned has accommodated that evidence by further restricting the claimant's postural activities, adding the environmental restrictions discussed above, and through the inclusion of the position change limitations. The additional postural limitations also generously accommodate the claimant's allegations of shoulder and wrist pain, which are not well documented in the record.

R. 35. The ALJ's discussion of the record evidence provides substantial support for her

consideration of these state agency opinions. *See Johnson*, 263 F. App'x at 203; *Garcia v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-2039, 2024 WL 665337, at *11 (M.D. Pa. Feb. 16, 2024)

("Because the ALJ explained why he rejected each limitation and supported his reasoning by

citing to the objective medical record, the ALJ met his burden of articulation."); *Serrano v.*

*Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case,

the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness

of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of

elaborating on her findings of persuasiveness."); *Peters v. Saul*, No. 3:19-CV-01672, 2020 WL

6799927, at *8 (M.D. Pa. Nov. 19, 2020) (affirming denial of benefits where, *inter alia*, the ALJ

supported the RFC limitations with objective medical evidence that revealed, among other

things, "generally normal strength and ranges of motion with occasional restriction due to the

pain that improved[;] routine and conservative care that included medication as well as injections

that stabilized and improved her symptoms[; and an examination that] showed normal strength

and mild decreases in range of motion despite her alleging extreme pain").

　　　　Plaintiff, however, challenges the ALJ's consideration of these opinions. Plaintiff first

argues that, although the ALJ found that the opinion that Plaintiff could perform light exertional

work was consistent with the record evidence, the ALJ never addressed the supportability of this

opinion, as required by the applicable regulation. *Plaintiff's Memorandum of Law*, ECF No. 9,

pp. 9–12; *Plaintiff's Reply Brief*, ECF No. 13, p. 2. The Court is not persuaded that this issue

requires remand. As an initial matter, the ALJ expressly acknowledged the governing regulation,

20 C.F.R. § 404.1520c, at step four before evaluating the opinion evidence. R. 30. The ALJ also

stated that she "fully considered the . . . prior administrative medical findings[.]" R. 33. As

detailed above, all the reviewing state agency medical consultants concluded that Plaintiff was capable of performing light exertional work; they specifically opined that he was capable of occasionally lifting and/or carrying up to 20 pounds; frequently lifting and/or carrying up to 10 pounds; standing and/or walking about 6 hours in an 8-hour workday; and sitting for about 6 hours in an 8-hour workday. R. 86, 88, 102–05, 117. Consultant Sobelman noted that Plaintiff's symptoms had "significantly improved" and that the "RFC is reasoned from the MER [medical evidence of record] in file[,]" R. 86, 88; Consultant Encarnacion found that Plaintiff had "normal ventricular functions[,]" "normal" aortic root, and that "[e]xam showed claimant['s] CVS [cardiovascular system] is stable[,]" and "[g]iven the evidence, claimant warrants a 20/10/6/6 RFC[,]" R. 90; Consultant Pirone also noted that Plaintiff's "symptoms have significantly improved" and that RFC1 "is reasoned from the MER in file"; and, as to RFC2, Plaintiff had "normal ventricular functions[,]" "normal" aortic root, and that "[e]xam showed claimant['s] CVS is stable[,]" and "[g]iven the evidence, claimant warrants a 20/10/6/6 RFC[,]" R. 103–04, 106; and Consultant McLarnon found that "by 05/2019 weakness had completely recovered according to treating neurologist" and that "greater weight is given to specialist opinion[,]" R. 117. The ALJ found these state agency opinions to be "partly persuasive[,]" R. 35 (citing to Exhibit 2A, R. 78–92; Exhibit 4A, 94–108; Exhibit 5A, 109–24), and expressly stated that the opinions that Plaintiff could perform light exertional work were persuasive because they were consistent with the record evidence. R. 35. Although the ALJ did not expressly use the word "supportability" when considering these opinions, the ALJ was not required to employ any special language when considering opinion evidence in accordance with the applicable regulations. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) 504 ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not require the ALJ to use

particular language or adhere to a particular format in conducting his analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). A fair reading of the ALJ's decision and the state agency evidence reflects that the ALJ implicitly found that the normal and stable physical findings as well as the findings that Plaintiff's symptoms had significantly improved and that Plaintiff had completely recovered from his weakness supported the unanimous state agency opinions that Plaintiff was capable of light exertional work. R. 30, 33, 35, 86, 88, 90, 103–04, 106, 117. Therefore, based on the specific evidence in this case and the ALJ's consideration, the instant record persuades this Court that the ALJ sufficiently considered the supportability of the state agency opinions in accordance with the applicable regulation. *Cf. Zaborowski v. Comm'r of Soc. Sec.*, No. 23-2637, 2024 WL 4220691, at *2 (3d Cir. Sept. 18, 2024) (stating that "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor. And *the administrative judge did weave supportability and consistency throughout her analysis of which doctors were persuasive*" where, *inter alia*, the ALJ found a "psychologist based his opinion on his examination of [the claimant], and the administrative judge *found it persuasive because it is consistent with the record*'") (emphasis added).

Plaintiff complains that the state agency explanations "lack details and analysis" and are therefore insufficient to satisfy the supportability factor. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 10; *see also Plaintiff's Reply Brief*, ECF No. 13, p. 2. The Court disagrees. The state agency consultants' explanations—*i.e.*, that Plaintiff's symptoms had "significantly improved"; that Plaintiff had "normal" aortic root and ventricular functions; that Plaintiff's CVS was stable; and that Plaintiff's weakness had "completely recovered" by May 2019—adequately support the unanimous state agency exertional opinions.

Plaintiff also complains that "the presence of two opinions at each level without clarifying what this meant undermines supportability." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 11. This Court again disagrees. As previously discussed, and as the ALJ expressly recognized, R. 35, all the state agency medical consultants at both the initial and reconsideration levels unanimously opined that Plaintiff was capable of performing light exertional work. R. 86, 88, 102–05, 117. Therefore, there was no need to clarify these unanimous exertional opinions.

Plaintiff engages in pure speculation when he argues that, "[f]urther undermining supportability is the *possibility* that Sobelman was not a health care professional and that Dr. Pirone *may* have simply adopted the opinion of someone who is not a health care professional." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 11 (emphasis added). That speculation is unfounded. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180, at *1–2 (instructing further that state agency opinions "must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review").

Plaintiff also challenges the ALJ's consideration of the consistency of the state agency opinions. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 11–12; *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–3. Plaintiff notes that the ALJ, after finding the opinion that Plaintiff could perform light exertional work, also found that "the remainder of the state agency assessments" did not adequately accommodate Plaintiff's mild obstructive airway disease, headaches, fatigue, and occasional mild residual right-side weakness and the ALJ apparently accommodated these conditions by adding postural and environmental limitations and a change of position limitation to the RFC. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 11 (citing R. 35). Plaintiff asserts

that this evidence—mild obstructive airway disease, headaches, fatigue, and occasional mild residual right-side weakness—is not consistent with light exertional work but offers no explanation for that assertion. *See Plaintiff's Memorandum of Law*, ECF No. 9, p. 11; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."); *cf. Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."). Notably, Plaintiff's insistence in this regard boils down to simply a disagreement with the ALJ, whose exertional finding the Court has already explained is supported by substantial evidence. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose his–or this Court's–own factual determination. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

Plaintiff also asserts—again without explanation—that "the record did not simply show intact motor strength—it revealed diminished but intact strength." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 12 (citing R. 394, 699, 741, 746, 750, 753). It is not clear what Plaintiff intends by this conclusory assertion. *See Padgett*, 2018 WL 1399307, at *2. Nevertheless, to the

extent that Plaintiff intends to undermine the ALJ's finding that he could perform light exertional work because it was consistent with the evidence, including intact motor strength, that challenge is unavailing. As an initial matter, the ALJ expressly stated that the evidence "generally" showed, *inter alia*, "intact motor strength[.]" R. 35. The ALJ did not find that the record always, or only, reflected intact motor strength. *Id.* Even accepting Plaintiff's assertion of six instances of "diminished but intact strength[,]" such evidence is not necessarily inconsistent with the ALJ's finding that the evidence "generally" reflected intact motor strength. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). In short, Plaintiff has not established that this issue requires remand.

In continuing to challenge the RFC, Plaintiff next contends that the ALJ did not adequately consider the opinion of physician's assistant Khan, and that the ALJ's analysis did not sufficiently explain the RFC limitation that, after standing or walking 30 minutes, Plaintiff must be able to sit at the work-station for 3 minutes while on task before resuming standing or walking; and that, after sitting for 30 minutes, he must be able stand at the work-station for 3 minutes while on task before resuming sitting ("the sit/stand restriction"). *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 12–17; *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4. For the reasons that follow, Plaintiff's arguments are not well taken.

In crafting the RFC, including the sit/stand restriction, the ALJ specifically considered

Mr. Khan's opinion, but found it "unpersuasive[,]" reasoning as follows:

> The opinion provided by Haroon M. Khan,, P.A. in the claimant's cardiologist's office at Exhibit 24F/2, 3, dated November 3, 2020, is unpersuasive. It states that the claimant experiences dyspnea and fatigue and shortness of breath but no angina. Further, that his condition causes marked limitation of physical activity, including a restriction to sitting for 30 minutes at a time and standing for 30 minutes at a time for a total of two hours in an eight-hour day. He also opined that the claimant would need the ability to change positions at will and that he would require three unscheduled 10-minute breaks per day due to his symptoms. This opinion is inconsistent with the examiner's own treatment notes at Exhibit 19F/6 indicating that the claimant had no chest pain during a stress test. It is also inconsistent with the generally normal physical and neurological examinations noted at Exhibits 7F/20, 36, 45-46; 8F/17, 71; 9F/11; 12F/9; 15F/22, 44; 22F/3; and 34F/14 and there is no evidence of significant treatment for musculoskeletal pain.

> Notably, the claimant was seen in cardiac follow up by N.P. Khan on November 3, 2020. The claimant reported shortness of breath, chest pains and dizziness. He denied having musculoskeletal aches or joint pain. Physical examination was within normal limits. N.P. Khan stated that "at this time I do not see a clear etiology for shortness of breath, will refer to pulmonologist for further evaluation" (Exhibit 34F/9-12).

> The claimant was seen for cardiac follow-up by NP Khan in March 2021 (Exhibit 34F/5-8). There was no report of headaches. Physical examination was completely normal. The claimant's cardiac MRI was without evidence of hypertrophic cardiomyopathy. The claimant reported that his pulmonary workup was negative and that his shortness of breath was felt to be from deconditioning (Exhibit 34F/8, 41-42). A coronary angiogram (CCTA) indicated no significant coronary artery disease (Exhibit 34F/8). During a September 2020 meeting with his neurologist, the claimant denied chest pain, cough, and shortness of breath (Exhibit 29F/5). The claimant's spirometry testing and oxygen saturation findings also fail to support the presence of debilitating shortness of breath. He does not require home oxygen and he has not required medical intervention or hospitalization for asthma exacerbations. The mild findings noted during medical treatment does not support the opinion of NP Khan that the claimant would require multiple unscheduled breaks during the day or that he is unable to sit or walk for longer than 30 minutes at a time. However, in light of the evidence of headaches, evidence of residual, mild right sided weakness on some examinations, and the claimant's reports of fatigue during some medical visits, the undersigned has given limited the claimant to work where, after standing or walking 30 minutes, he may sit at the work-station for 3 minutes while on task before resuming standing or walking, and after sitting 30 minutes may stand at the work station for 3 minutes while on task before resuming sitting.

R. 33–34. The Court finds no error in the ALJ's evaluation. *See* 20 C.F.R. § 404.1520c(c)(1), (2); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record" such as, *inter alia*, the treatment records, for instance, indicated a greater ability to walk, lift, and stand); *Peters*, 2020 WL 6799927, at *8.

Plaintiff argues that Mr. Khan's "opinion was based on CVA, atrial fibrillation, dyspnea, fatigue, and shortness of breath (AR 976)[,]" apparently contesting the ALJ's reasoning in discounting this opinion on the ground that there was no evidence of significant treatment for musculoskeletal pain and generally normal physical and neurological examinations. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15; *see also* R. 33. However, Plaintiff's reliance on Mr. Khan's diagnoses of CVA and atrial fibrillation is unavailing, as "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91

F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). While Mr. Khan pointed to symptoms of dyspnea and fatigue, R. 976, the ALJ expressly considered these symptoms when evaluating Mr. Khan's opinion and crafting the RFC. R. 33–34. Notably, the ALJ noted that Plaintiff denied shortness of breath at times and explained that Plaintiff's "spirometry testing and oxygen saturation findings also fail to support the presence of debilitating shortness of breath. He does not require home oxygen and he has not required medical intervention or hospitalization for asthma exacerbations." R. 34. The ALJ also stated that he accommodated Plaintiff's fatigue by including, *inter alia*, the sit/stand restriction in the RFC. *Id*. In other words, the ALJ explained how he reasonably considered these symptoms when evaluating Mr. Khan's opinion and formulating the RFC determination. *Id*.

Plaintiff next objects to the ALJ's finding that Mr. Khan's opinion was inconsistent with notes showing no chest pain during a stress test. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15. Plaintiff contends that "there is no indication that the ALJ had information available to her that might explain how a stress test related to Plaintiff's abilities" and that "Plaintiff failed the treadmill stress test and had to go to a nuclear stress test[,]" which "does nothing to support the conclusion that no chest pain was material to a finding that Plaintiff was sufficiently healthy to work[.]" *Id*. According to Plaintiff, "without further clarification from a health care professional, it only appears to undermine a finding of non-disability." *Id*. (arguing further that the ALJ relied on an "impermissible interpretation of clinical information of a complex nature" when rejecting Mr. Khan's opinion). Plaintiff's arguments are not well taken.

As set forth above, the ALJ noted that Mr. Khan's opinion that Plaintiff would need a job

that permits changing positions at will and required three unscheduled 10-minute breaks per day

was inconsistent with Mr. Khan's "own treatment notes at Exhibit 19F/6 [R. 904][9] indicating that

the claimant had no chest pain during a stress test." R. 33. Earlier in her opinion, the ALJ had

also discussed this test, noting that "[a]n exercise stress test was administered in August 2019

and the claimant exercised for six minutes and 45 seconds, achieving approximately 10.1

METS." The doctor noted that this was a sub-maximal exercise stress test (Exhibit 19F/10 [R.

908])." R. 32. The stress test findings further indicated as follows:

> Following informed consent, the patient exercised on the Bruce protocol. They
> exercised for a total of 6 minutes and 45 seconds, achieving approximately 10.1
> METs. Baseline heart rate was measured at 60 bpm. A maximum heart rate of 124
> beats per minute was achieved, which is 73% of maximum predicted heart rate. *The
> heart rate response was normal.* The *baseline blood pressure* was 120/72 mmHg
> and increased to 142/90 mmHg at peak exercise, which is *a normal response to
> exercise.*
> Resting ECG demonstrated normal sinus rhythm and non-specific T-wave
> abnormalities.
> Peak ECG demonstrated sinus tachycardia and no ST-T wave abnormalities.
> *During exercise the patient developed no chest pain.* Exercise was terminated due
> to fatigue/weakness.

R. 908 (emphasis added); *see also Sammons v. Saul*, No. 2:19-CV-00319, 2020 WL 2107666, at

*4 n.2 (S.D.W. Va. Mar. 31, 2020), *report and recommendation adopted*, No. 2:19-CV-00319,

---

[9] Mr. Khan's note regarding this test reads as follows:

> ETT [Exercise Tolerance Test] 08/07/19-

> The patient exercised for 6 minutes and 45 seconds on Bruce protocol; achieved
> 10.1 METs at 73% of maximum predicted heart rate. Chest pain is not present. Sub-
> maximal exercise stress test (correlate clinically)

> (Consider imaging study such as Nuclear SPECT, Cardiac PET, 64 Slice Coronary
> CTA)

R. 904.

2020 WL 2099565 (S.D.W. Va. Apr. 30, 2020) ("The Bruce protocol is a standard test in cardiology and is comprised of multiple exercise stages of three minutes each. At each stage, the gradient and speed of the treadmill are elevated to increase work output, called METS.") (internal quotation marks and citations omitted); *Benway v. Colvin*, No. 3:11-CV-02233, 2013 WL 3989149, at *5 n.15 (M.D. Pa. Aug. 2, 2013) ("METS is an abbreviation for metabolic equivalents of tasks, that is the multiples of resting oxygen uptake. The ability to exercise to 10 METS is consistent with 'a good exercise tolerance.'") (citations omitted). In other words, the ALJ properly considered normal cardiac findings and the absence of chest pain during an exercise tolerance test when discounting Mr. Khan's extreme opinions, *i.e.*, that Plaintiff needed to take three unscheduled 10-minute breaks per day and needed the ability to change positions at will. *See id.*; *see also* R. 33. Accordingly, the ALJ's discussion and cited medical evidence underlying that discussion bely Plaintiff's assertions that the ALJ impermissibly relied on her lay interpretation of "complex" "clinical information[.]" *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15.

Plaintiff also argues that the ALJ erred in discounting Mr. Khan's opinion that Plaintiff was incapable of even low stress jobs because Plaintiff has "shortness of breath when stressed [that] would interfere with attention and concentration." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 16 (citing R. 73). According to Plaintiff, Mr. Khan "supported [his] opinion by reference to Plaintiff's breathing and fatigue (AR 976), and the ALJ faulted the non-examining opinions for not considering obstructive airway disease and fatigue (AR 35)." *Id*. Plaintiff concedes that he "may not have a severe mental impairment," but contends that, "until the ALJ

obtains meaningful analysis from a health care professional—it is not reasonable for a layperson to assume that Plaintiff's physical condition would permit work in accordance with SSR 85-15." *Id.*; *see also id.* at 17 (discussing SSR 85-15). Plaintiff's arguments are not well taken.

As a preliminary matter, SSR 85-15 is inapplicable in cases involving exertional limitations. SSR 85-15, 1985 WL 56857, at *2 (clarifying "policies applicable in cases involving the evaluation of solely nonexertional impairments"). Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)[.]" 20 C.F.R. § 404.1569a(b). Nonexertional limitations "affect only [a claimant's] ability to meet the demands of jobs other than the strength demands," such as "difficulty functioning because [a claimant is] nervous, anxious, or depressed;" "difficulty maintaining attention or concentrating;" "difficulty understanding or remembering detailed instructions;"; "difficulty in seeing or hearing;" "difficulty tolerating some physical feature(s) of certain work settings, e.g., . . . cannot tolerate dust or fumes;" or "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." *Id.* at § 404.1569a(c)(1). In the present case, Plaintiff suffers from the severe impairments of status post left basal ganglionic infarction, atrial fibrillation, headaches, and asthma and the non-severe impairment of, *inter alia*, depression. R. 28–29. SSR 85-15 is therefore inapplicable in this case where Plaintiff suffers from both exertional and nonexertional impairments. SSR 85-15; *see also Rutter v. Saul*, No. CV 19-263, 2021 WL 425119, at *4 (W.D. Pa. Feb. 8, 2021) ("Social Security Ruling 85-15 is titled The Medical–Vocational Rules as a Framework for Evaluating *Solely* Nonexertional Impairments.' (Emphasis added). Thus, SSR 85-15 does not apply to a case, such as this one, in which Plaintiff suffers from a combination of exertional and non-exertional impairments."); *Cruz v. Saul*, No. CV 3:17-71, 2019 WL 3801548,

at *5 (M.D. Pa. Aug. 13, 2019) ("Social Security Ruling 85-15 applies in cases solely dealing with nonexertional impairments. Here, the plaintiff was found to have exertional and nonexertional impairments. Therefore, SSR 85-15 is not applicable in this case.").

While Plaintiff concedes that he may not have a severe mental impairment, he nevertheless insists that the ALJ erred in discounting—before "a healthcare professional" could perform a "meaningful analysis"—Mr. Khan's opinion that Plaintiff cannot tolerate even low stress work because Plaintiff suffers from shortness of breath when stressed. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 16. However, as detailed above, Plaintiff has insisted that his "cognition and mental status are fine" and that "he does not wish to allege a mental impairment preventing him from working." R. 84. Moreover, in concluding that Plaintiff was incapable of performing even low stress jobs because stress causes shortness of breath that would frequently interfere with Plaintiff's attention and concentration, Mr. Khan relied on Plaintiff's subjective complaints. R. 73 ("Pt *reports* SOB [shortness of breath] when he is stressed.") (emphasis added). The mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton*, 131 F. App'x at 879 ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Notably, as

34

previously discussed, the ALJ specifically explained that the objective medical evidence "fail[s] to support the presence of debilitating shortness of breath." R. 34. Based on this record, Plaintiff has not persuaded this Court that the ALJ erred in discounting Mr. Khan's opinion that Plaintiff cannot tolerate even low stress work.

Finally, Plaintiff argues that the sit/stand restriction in the RFC was "completely made up" and that the ALJ did not provide any "non-arbitrary reason" for this restriction. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 12–15; *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4. As detailed above, the ALJ explained that she imposed this restriction "in light of the evidence of headaches, evidence of residual, mild right sided weakness on some examinations, and the claimant's reports of fatigue during some medical visits[.]" R. 34. Elsewhere in her discussion, the ALJ also considered Plaintiff's testimony that he could sit for no "longer than 20 minutes at a time due to neck pain and headaches" and that "he can only walk about 20 minutes before needing to stop and catch his breath[,]" R. 31; Plaintiff's report to a consultative examiner in January 2019 that his "right leg pain and fatigue [] limits his ability to walk since his stroke" and that he "can only walk about half a mile before he must stop[,]" R. 33; and Plaintiff's report to his primary care physician that he experienced, *inter alia*, dizziness and was diagnosed with migraines with aura, R. 34. Reading the discussion as a whole, the Court cannot say that the ALJ's sit/stand restriction was arbitrary or unsupported by record evidence.[10] Notably, to the extent that Plaintiff suggests that the ALJ must support every RFC limitation with a matching medical opinion, Plaintiff is mistaken. As previously discussed, the ALJ is charged with

---

[10] For this reason, Plaintiff's reliance on *Shannon v. Comm'r of Soc. Sec.*, No. 15-cv-6480, 2016 WL 5133741, at *14 (D. N.J. Sept. 20, 2016), is unavailing as that case is inapposite. *See id.* ("[T]he ALJ provided no medical or other evidence to support the conclusions that Plaintiff can sit for up to six hours per day with breaks, can handle low stress work, and would only be off task five percent of the workday.").

determining the claimant's RFC. 20 C.F.R. § 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). Accordingly, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362. The Court is therefore not persuaded that the ALJ's inclusion of the sit/stand restriction requires remand in this case.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of the reviewing state agency medical consultants and Mr. Khan.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  October 17, 2024                          *s/Norah McCann King*
                                                    NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE